## CITY OF JACKSON v. WASHINGTON NEWMAN.

1. **MUNICIPAL PRIVILEGE TAX.**  *Police power.*

    The exaction of forty dollars a year for the privilege of hack driving in a city, not being for the expense of labor and material in issuing the driver's license, cannot be sustained under the police power, which is inapplicable to revenue purposes, and from which the power to tax, which only exists as clearly granted, cannot be implied.

2. **SAME.**  *Taxing power.*

    The exaction cannot be sustained under the power in the charter to tax property and the callings of merchants, auctioneers, brokers, vendors of lottery tickets, and keepers of taverns and of theatres, circuses, and other exhibitions to which an admission fee is charged, for the callings embraced are only those which are enumerated.

3. **SAME.**  *Voluntary payment.*

    If the city marshal, as tax collector, threatens to stop a hack unless this tax is paid, and the hackman takes out a license and pays, complaining only that the amount is exorbitant, the payment is voluntary and cannot be recovered back from the city.

APPEAL from the Circuit Court of Hinds County.

Hon. S. S. CALHOON, Judge, did not sit in this case, but Hon. J. B. CHRISMAN presided by interchange.

The appellee brought this action of assumpsit against the appellant for sums of forty dollars which he averred the city for several years had compelled him to pay annually for the privilege of running a hack. The appellant pleaded non-assumpsit, and that the payments were voluntary. The payments were proved, and upon the evidence set out in the opinion, a jury being waived, the court gave judgment for the plaintiff.

*Shelton & Shelton,* for the appellant.

1. Under the police power inherent in the city, and also expressly given by charter, these license fees are legal. Dillon Mun. Corp. §§ 94, 96, 357. In a trading town hackmen and draymen must be licensed and controlled. *Brooklyn* v. *Breslin,* 57 N. Y. 591. If the cost is too great or the license fees are excessive, this does not affect the right. Power to license and regulate drays, wagons, and carriages kept for hire is conferred by the charter and sustains this license fee. *Cincinnati* v. *Buckingham,* 10 Ohio, 257 ; *Cincinnati* v. *Bryson,* 15 Ohio, 625, 647 ; *Tenney* v. *Lenz,* 16 Wis. 566 ; 1 Potter on Corp. 378 ; Dillon Mun. Corp. § 355.

2. The power of taxation given by the charter and statutes enabled the board of mayor and aldermen to collect the fees. This power is recognized by the State statutes. That these license fees may be assessed where the taxing power exists is shown by the State statutes and by decisions. *Lucas* v. *Lottery Commissioners,* 11 Gill & J. 490, 506 ; *Boston* v. *Schaffer,* 9 Pick. 415; *Gibbons* v. *Ogden,* 9 Wheat. 1, 190 ; *Cincinnati* v. *Buckingham,* 10 Ohio, 257. Only where the taxing power does not exist is the exercise of the police power excluded from the raising of revenue, and in this case, where it does exist, the Circuit Court cannot usurp the functions of the municipal authorities and say that the fees are too high.

3. Payment was made voluntarily, and the money cannot be recovered back. There was no compulsion. The case is not like a tax collector's force under legal authority to sell. Newman's want of punctuality, and his complaint that the fee was

too high, did not change the character of the payment. His hack was never interfered with. He went to the collector's office to pay the fee, and his only objection was to the amount. *Cook* v. *Boston*, 9 Allen, 393 ; *Briggs* v. *Boyd*, 56 N. Y. 289; *Flower* v. *Lance*, 59 N. Y. 603 ; *Mayor* v. *Lefferman*, 4 Gill, 425 ; *Bucknall* v. *Story*, 46 Cal. 589 ; 4 Wait's Actions and Defences, 476, 479.

*R. Shotwell*, for the appellee.

1. No principle of law is more firmly established than that municipal corporations have no power to tax unless conferred by legislation expressly or by necessary implication. *Sykes* v. *Columbus*, 55 Miss. 115 ; *Gaines* v. *Coates*, 51 Miss. 335 ; *Daily* v. *Swope*, 47 Miss. 367. Where a municipal corporation attempts to tax occupations or callings, the rule is more rigid. Cooley on Taxation, 387 ; Dillon Mun. Corp. § 764. In the city charter certain privileges are enumerated, and the specific mention of them excludes the idea of an intent to tax others. The privilege of running a hack is not included. Unless, then, this privilege comes under the same general class of privileges as are enumerated, the right to tax it does not exist. *Cincinnati* v. *Bryson*, 15 Ohio, 625 ; *Boston* v. *Schaffer*, 9 Pick. 415 ; *Drake* v. *Phillips*, 40 Ill. 388 ; Dillon Mun. Corp. § 765 ; *St. Louis* v. *Laughlin*, 49 Mo. 559; *Ex parte Taylor*, 58 Miss. 478. The act of the legislature approved March, 1875 (Acts 1875, p. 8), regulating taxes on privileges in this State, conferred no new powers of taxation on municipal corporations, but was merely a limitation of the exercise of such powers of taxation as cities and towns may have enjoyed prior to its passage. *Smith* v. *Vicksburg*, 54 Miss. 615.

2. The city had no right to demand the fee charged in this case as an exercise of police power. Where municipal corporations issue licenses to carry on certain avocations, they can only charge a reasonable sum to compensate for the labor and expense of issuing the license. If more is demanded the fee charged will be regarded as a tax for revenue and illegal. Dillon Mun. Corp. § 768 ; *Freeholders* v. *Barber*, 2 Halst. (N. J.) 64 ; *Kip* v. *Paterson*, 26 N. J. L. 298 ; *State* v. *Hoboken*, 33 N. J. L. 280 ; *Bennett* v. *Birmingham*, 31 Penn. St. 15 ; *Commonwealth* v. *Stodder*, 2 Cush. 552. But the ordinance

" taxes " the privilege in this case, and it is plain that the board of mayor and aldermen intended to tax the privilege for revenue purposes.

3. A payment of illegal taxes is not voluntarily made where the parties do not stand upon an equal footing. *Vicksburg* v. *Butler*, 56 Miss. 72. Where there is a criminal penalty attached to a non-payment, as in this case, any payment that is made by the tax-payer is impliedly compulsory or under protest. *Marshall* v. *Snediker*, 25 Texas, 460 ; *Baker* v. *Panola County*, 30 Texas, 86. In the case at bar the licensee did not pay the fee promptly when it fell due, and was consequently running the risk of an arrest, in accordance with the collector's threat when the payment was made. Under such circumstances the payment was compulsory.

COOPER, J., delivered the opinion of the court.

The police power conferred upon the board of mayor and aldermen of the city of Jackson did not authorize them to so regulate the business of the residents of the town as to derive a revenue therefrom. The power to tax is a separate, independent power, and exists in municipal corporations only to the extent to which it is clearly conferred by their charters, and its existence cannot be implied or deduced from other powers conferred. The ordinances under which the collections were made from the appellee were clearly intended as means for raising revenue, and it is apparent that the fees required were not for the purpose of paying the cost of the labor and material in issuing the license. The ordinances declare that " there is hereby levied a tax on privileges as follows."

It is said, however, that, admitting the claim to have been made under the power to tax, instead of under the police power, the city had such authority, and it is claimed to exist under section three of the act of incorporation, which provides as follows : " They shall have power to levy a tax in each and every year in a sum not exceeding fifty cents on every hundred dollars of value thereof, on all lots of ground, or lots and tenements within said city ; and they shall have full power and authority to levy taxes on all property and things not hereinafter specified in this act, subject to taxation in the city ; and

they shall have power to fix the rate of taxes on all merchants, auctioneers, brokers, vendors of lottery tickets, tavern keepers, proprietors of theatres, circuses and menageries, and on all persons making any public exhibition of their personal powers or agility, or anything they may possess, for which exhibition they shall charge an admittance fee to such as may attend." Section twenty-three provides that " the amount of licenses assessed and received, and all fines and forfeitures that may arise, accrue, or that may be assessed for or in virtue of this act, shall inure to said corporation for the benefits of said city." The power to tax conferred by section three of the statute of incorporation includes only taxation of property and the callings therein enumerated. The privileges enumerated upon which taxes may be levied are those of merchants, auctioneers, brokers, vendors of lottery tickets, tavern-keepers, proprietors of theatres, circuses and menageries, and other exhibitions to which an admittance fee is charged. In *Ex parte Taylor*, 58 Miss. 478, it was held that the city of Vicksburg, under a clause of its charter authorizing it to levy and collect a corporation privilege tax " upon the business, trade, or employment of all auctioneers, grocers, merchants, brokers, bankers, cotton factors and cotton sellers, retailers, taverns, hotels, boarding-house keepers, coffee-house keepers, retail liquor dealers, confectioners, pedlers, junk-dealers, and *others of like character*, as the board may designate," could not impose a privilege tax upon a person exercising the business of a commercial traveller, because the employment was not of like character with those which the city was authorized to tax. The present case is one more clearly beyond the exercise of the power to tax by the town, and the appellee is entitled to the recovery obtained, unless it appears that the payment was voluntarily made.

The evidence shows that the appellee was spoken to by the tax collector of the town, and requested to pay the license fees as they became due under the ordinances ; and that the tax collector stated to him that he would have to stop his team if the taxes were not paid, and thereupon the appellee went to the office of the collector, and paid the license fees, complaining, however, that the amount charged was exorbitant. Under

what circumstances the payment of an illegal or unwarranted tax will be considered to have been made under compulsion, the authorities in the different States are widely divergent. In this State it is settled that, if at the time the demand is made the collector is armed with authority of law to seize the goods or arrest the party if the tax is not paid, and the party objects to its collection because of its illegality, but pays to prevent a seizure of his goods or the arrest of his person, the payment is compulsory and may be recovered back. *Vicksburg* v. *Butler*, 56 Miss. 72. On the other hand, if the payment is made by the party without objection, it cannot be recovered, although non-payment would have subjected him to criminal prosecution. *Tupelo* v. *Beard*, 56 Miss. 532. In the case at bar, the collector had no authority, at the time he called on the appellee for payment, to seize his property or arrest his person, nor was any suggestion made that either would be attempted. At most the statement was that the appellee would not be permitted to pursue his business unless the licenses were obtained. No duress of person or of property was threatened, and the payments were voluntarily made, and the appellee was not entitled to recover the same.

*Judgment reversed.*