## SAVILLE v. CORLESS, Sheriff.

## PORIZKY v. SAME.

Nos. 2815, 2816.   Decided July 20, 1915.   (151 Pac. 51.)

1. STATUTES—CONSTITUTIONAL PROVISIONS—SUBJECT AND TITLE OF ACT. Laws 1915, c. 23, entitled "An act to regulate the working hours of all employees of mercantile establishments," providing by section 1 that all mercantile and commercial houses in cities of 10,000 population and over should close at six p. m. on every business day in the year except for the six business days preceding December 25th, by section 2 exempting all houses dealing mainly in provisions of a perishable nature which are regarded as public necessities, by section 3, exempting drug stores which are regarded as public necessities, violated the constitutional provision that the subject of an act shall be clearly expressed in its title, since instead of regulating the working hours of employees, the body of the act fixed a closing hour for mercantile and commercial houses, extending both to those having employees and those having none.   (Page 496.)

2. MASTER AND SERVANT—STATUTORY REGULATIONS—HOURS OF WORK AND CLOSING. Such act was invalid as an exercise of the police power, since the men's furnishing and jewelry business conducted by one of the petitioners without help, and the retail cigar business of the other petitioner, did not affect the health or safety of those engaged in it, and since the act fixed a closing hour and was not directed to enterprises affecting the health, morals, safety, or general welfare.   (Page 497.)

3. STATUTES—SPECIAL LEGISLATION—OCCUPATION AND EMPLOYMENT. Such act was objectionable as being special legislation, since it only applied to cities of 10,000 or more, and since it exempted drug stores and commercial houses dealing mainly in food stuffs and provisions of a perishable nature.   (Page 498.)

4. CONSTITUTIONAL LAW—PERSONAL RIGHTS—RIGHT TO ACQUIRE AND DISPOSE OF PROPERTY. Such act violated the constitutional right to enjoy, acquire, and possess property, the most valuable of which is that of the right to sell.   (Page 498.)

Original *habeas corpus* proceedings by Walter Saville and by William Porizky against John S. Corless, Sheriff of Salt Lake County.

Writs granted.

*Howat, Macmillan & Nebeker* and *James Ingebretsen* for plaintiff.

*H. L. Mulliner,* County Attorney, and *H. Van Dam, Jr.,* Assistant County Attorney, for defendant.

STRAUP, C. J.

·The plaintiffs are held in custody by the defendant for alleged violations of chapter 23, Laws of Utah, 1915. They, on applications for a writ of *habeas corpus,* asked to be discharged on alleged grounds of invalidity of the act, that the subject of the act is not clearly expressed in the title, and that the act contravenes the fourteenth amendment to the Constitution of the United States, and the state Constitution, forbidding special legislaion where a general law can be made applicable.

The Constitution provides that the subject of acts shall be clearly expressed in the title. There is a subject expressed in this title. It is, ''An act to regulate the working hours of all employees of mercantile establishments.'' The act itself provides, section 1:

''That all mercantile and commercial houses, either wholesale or retail, or both, in the cities of ten thousand population and over, shall close at six o'clock in the evening of every business day of the year, except for the period of six business days immediately preceding December 25, of each year.''

Section 2:

''This act exempts all commercial and mercantile houses that deal exclusively in, or whose major portion of stock consists of foodstuffs, meats and other provisions of a perishable nature; which are regarded as, and are, public necessities.''.

Section 3:

''That this act also exempts drug stores, which are regarded as, and are, public necessities.''

It is thus seen that the title of the act is to regulate the working hours of employees of·mercantile establishments; but when we look to the body of the act, we find nothing concerning such a subject, but find one wholly different, a subject fixing a closing hour for mercantile and commercial houses.

The act itself forbids them to be open after six o'clock, regardless of the subject of employees or of their working hours. It just as much forbids one who has no employees from conducting his business, or keeping it open, after six o'clock, as one who has or conducts his business with employees. It makes the business itself unlawful after six o'clock. No such subject is expressed in the title.

The act is defended on the ground that it is a police measure and that as such it was competent for the Legislature to fix and regulate working hours of employees of mercantile and commercial houses and establishments. As has been seen, the act itself in no manner relates to such a subject. If, however, that be the intent, then does the **2** act contravene the fourteenth amendment to the Constitution of the United States. That very clearly is shown by the case of *Lochner* v. *New York,* 198 U. S. 45, 25 Sup. Ct. 539, 49 L. Ed. 937, 3 Ann. Cas. 1133. There, the State of New York forbade the employment of bakers longer than ten hours per day. The Supreme Court of the United States held the act bad, because it abridged the right to contract. The act there, as here, was defended as a police measure; but the court held that it in no manner related to public health, morals, safety, or general welfare, nor to the health, morals, or safety of those engaged in the business. One of the plaintiffs is a merchant engaged in selling men's clothing, furnishing goods, boots, shoes, jewelry, etc., in Salt Lake City. He conducted his business without help. The other plaintiff is engaged in selling cigars at retail in Salt Lake City. Both of them sold goods after six o'clock p. m. That, and that only, constitutes the alleged violation. It also is averred and admitted that commercial houses, or establishments in Salt Lake City, and in other cities of 10,000 or more population, and exempt under the act, deal in and sell, after six o'clock, the same kind of goods dealt in and sold by the plaintiffs after that hour. Whether the act be viewed as expressed in the title, or as indicated in the body of the act, we do not see how it can be defended as a police measure. The business conducted by the plaintiffs does not affect the health or safety of those engaged in it. Nor is the act directed to enterprises affecting health,

morals, safety, or general welfare. It strikes at all commercial houses and establishments, not within the exemptions, and forbids them to be open after six o'clock, regardless of the character of the business carried on, and regardless of whether it does, or does not, affect health, or morals, or safety. It, therefore, cannot be upheld as a police measure.

We also think the act special legislation. It only applies to cities of 10,000 population or over. Business houses or commercial establishments in other cities and towns may keep open at all hours of the day or night, and sell anything not otherwise forbidden by law. The act further exempts drug stores, and commercial houses dealing exclusively 3 in, or whose major portion of stock consists of, food-stuffs, meats, and provisions of a perishable nature. Under the act, such establishments or houses can keep open and sell anything after six o'clock. That is, a hardware, jewelry, book, dry goods, clothing, or cigar store, and many other stores cannot keep open or sell anything after six o'clock. But a drug store, or a store whose major portion of stock is food-stuffs, can keep open after six o'clock, and sell anything not otherwise forbidden by law. Drug stores are not restricted after six o'clock to the sale of drugs merely, nor are food stores to food and provisions. They are privileged to sell, and under the admitted facts, do keep open and sell, after six o'clock, the same things the plaintiffs are forbidden to sell after that hour. Clearly that is special legislation, and the granting of privileges forbidden by the Constitution. We therefore think the act bad on all three grounds.

We think it also offends against constitutional rights to enjoy, acquire and possess property, the most valuable of which is that of alienation, the right to vend and sell. There are things the sale of which may be restricted, 4 regulated, or even prohibited by the Legislature, and enterprises which may be restricted, regulated and controlled. But such legal interference must rest on the police power of the state to promote or preserve public health, public morals, public safety, public convenience, and general welfare. The act here has no such purpose, and in no sense tends to promote or preserve public health, morals, peace, order, safety, con-

venience, comfort, or welfare. It is but an arbitrary and an unwarranted interference with a merchant's business. One or a number of merchants may desire to close their stores at six o'clock. They may do that. But they, by legislation, cannot compel every other merchant to close at the same hour. They can run their own business, but not their neighbor's. So employees, for motives of their own, may desire all stores to close at a certain hour. But their employers, whose business and property is affected, have a voice in that. They, if they choose, may consent to close. But they cannot, by legislation or otherwise, be coerced to do so. An employee may refuse to work for another after six o'clock. That is his right. But he may not, by legislation or otherwise, prevent his employer from conducting his own business in person, or with other employees who are willing to work for him. That is an unwarranted interference with the rights of others. All this is so self-evident and fundamental as not to admit of argument. Most sweeping amendments to both the federal and state Constitutions are essential to sanction such legislation as indicated in either the title or body of the act before us. If there be one thing more than others to be guarded against encroachment it is the federal and state Constitutions. These we are all sworn to protect and defend. To disobey them is to jeopardize fundamental rights and liberties of the people, imperil their welfare and happiness, and to menace the very existence of governments.

The writs are granted, and the plaintiffs permitted to go without day.

FRICK and McCARTY, JJ, concur.