## PUBLIC SERVICE COMMISSION *v.* KOLB'S BAKERY & DAIRY, INC.
## WILBUR F. MILLER *v.* SAME.
## TIDEWATER EXPRESS LINES, INC. *v.* SAME.

[Nos. 21-23, January Term, 1939.]

*Decided February 2nd, 1939.*

The causes were argued before BOND, C. J., OFFUTT, SLOAN, MITCHELL, SHEHAN, JOHNSON, and DELAPLAINE, JJ.

*J. Purdon Wright,* for the Public Service Commission, appellant.

*David G. McIntosh, Jr.,* with whom were *McIntosh & Thrift* on the brief, for Wilbur F. Miller, appellant.

*Francis Key Murray,* submitting on brief, for the Tidewater Express Lines, Inc.

*Howard C. Bregel* and *Malcolm J. Coan*, with whom were *Bruce T. Bair* and *James E. Boylan, Jr.*, for the appellee.

DELAPLAINE, J., delivered the opinion of the Court.

This is an appeal from a decree of the Circuit Court for Carroll County enjoining the Public Service Commission of Maryland from enforcing an order which would prevent Kolb's Bakery and Dairy, Inc., the appellee, a corporation located in Baltimore, in the business of pasteurizing, bottling, and selling milk, from "collecting, hauling and conveying to its dairy by its own motor vehicle transportation its fluid milk supply which is purchased from the producers of milk whose farms are located along the routes served by the intervenors, Wilbur F. Miller, trading as Snyder's Express, and the Tidewater Express Lines, Inc., under subsisting permits heretofore issued by said Commission."

Miller, trading as Snyder's Express, a carrier authorized to haul freight by motor truck, filed a complaint with the Commission under Code [Supp. 1935], art. 56, sec. 262A, alleging that the appellee had ben picking up milk of shippers on his franchise route and hauling the milk without a permit, thereby infringing unlawfully on the rights granted to him by the Commission. The Tidewater Express Lines, Inc., another carrier, intervened as a complainant in the proceedings. The Commission held that the motor vehicle operations complained of were subject to the Public Freight Motor Vehicle Law, and ordered the appellees to cease the operations.

The dairy company thereupon filed a bill of complaint under Code, art. 23, sec. 404, praying that the Commission be enjoined from enforcing its order. Miller and the Tidewater company intervened as defendants. The defendants filed combined demurrers and answers to the bill of complaint. No testimony was offered other than the record before the Commission. The court over-ruled the demurrers and issued the injunction sought by the dairy company.

The question in this case is whether the dairy company was hauling its own milk, or whether it was engaged in hauling milk *for hire*. The company insisted that its driver purchased the milk from the producer at the farm. Up until June 30th, 1938, the driver made an inspection of the milk for odor and appearance as well as for temperature; but after the Health Department of Baltimore City ordered the company to stop removing lids from the cans until after they arrived at the dairy, the company addressed a letter to the producers, announcing that after June 30th, 1938, the driver would merely test the milk for temperature by feeling the outside of the can. The company stated in this letter: "Upon loading the milk on our truck it becomes our property, and any loss that may thereafter occur through spoilage, accident, or in the event the milk should turn out to be bloody or of bad odor, it will be *our* loss. * * * We want it understood, all reports to the contrary, that we are not engaged in the transportation business, but are purchasing our milk from you at your farm to assure ourselves not only of the quality of the milk that we use at the dairy, but for the further reason that we desire to pick out the person with whom we deal."

It is clear from the announcement that the company's purpose was to buy the milk from the producers at the farm. There was testimony indicating that, prior to June 30th, 1938, some milk with garlic or other defects had not been paid for by the company; however, any such defects were waived by the positive language of the letter to the producers. After that time any loss occurring after the milk was loaded on the truck was the loss of the dairy company.

Reliance was placed by the appellants upon the decision of this court in *Public Service Commission v. Western Maryland Dairy*, 150 Md. 641, 135 A. 136; but in that case the milk was consigned to the Maryland State Dairymen's Association, but with a fixed charge for transportation according to zones, and the milk was then sold by the association to the dealers, including the Western

Maryland Dairy. The amount of milk to be purchased was not ascertained until after it reached the dairy. If any of the milk was not satisfactory, it was returned to the producer. In that case, as well as in *Public Service Commission v. Tidewater Express Lines*, 168 Md. 581, 179 A. 176, the milk was the property of the producer while in transit, and the title did not pass until it was accepted at the buyer's plant.

The jurisdiction of the Public Service Commission has included "any common carrier operating or doing business within the State." Code, art. 23, sec. 350. By a later statute (Acts of 1924, ch. 291), the jurisdiction has been extended to "each owner of a motor vehicle to be used in the *public* transportation of merchandise or freight," and to "corporations, groups of individuals and associations engaged in the transportation of freight or merchandise of their stockholders, shareholders or members whether on the cooperative plan or otherwise." Code (1935 Supp.), art. 56, secs. 258, 259. A co-operative association hauling frieght for its members for hire, even though not a common carrier, has been held to be a public carrier, subject to the Public Freight Motor Vehicle Law. *Parlett Co-Operative v. Tidewater Lines*, 164 Md. 405, 165 A. 313. But there is no statute vesting in the Public Service Commission authority to exercise jurisdiction over the transportation of one's own property. A person hauling his own property for himself is neither a common carrier nor a public carrier for hire. The Public Service Commission, acting under a specially conferred grant of power by the Legislature, exercises only a limited jurisdiction, and where a jurisdiction is so limited, it will be strictly construed. *Benson v. Public Service Commission*, 141 Md. 398, 118 A. 852.

In this case the dairy company agreed to pay for the milk at the rate of twenty cents per gallon for milk testing four per cent butter fat, with an increase or decrease of one-half a cent for every point of rise or fall in the percentage of butter fat. The fact that the test established the amount due to the producer did not alter the

time of delivery. Delivery is the act by which the seller parts with his possession and title, and the buyer acquires the possession and title. 18 *C. J.* 478. It is not essential that a price shall be fixed or stated definitely in a contract, where a method for definitely ascertaining it is agreed upon. 55 *C. J.* 68. Thus, in *Farmers' Phosphate Co. v. Gill,* 69 Md. 537, 16 A. 214, where there was an agreement that a shipment of phosphate should be weighed and its quality tested upon its arrival at the buyer's plant, the court held that the passing of the title was not deferred until these acts were performed, as the buyer had no right under the contract to reject the shipment if it did not meet the prescribed standard, but in such an event he was merely allowed a proportionate abatement of the price. If the buyer has the right to refuse the merchandise delivered in the event it does not meet the test, then there is conclusive indication that the title does not pass until opportunity for making the test has been afforded. *Agri Mfg. Co. v. Atlantic Fertilizer Co.,* 129 Md. 42, 98 A. 365. But in the present case the driver of the motor truck purchased the milk as the agent for the dairy company, the ownership of the milk passed when it was placed on the truck, and any milk which was defective was the company's loss. *Obrecht v. Crawford,* 175 Md. 385, 2 A. 2nd 1.

The question here is whether the order of the Public Service Commission is "unreasonable or unlawful, as the case may be." Code, art. 23, sec. 408. The question for us to decide is whether the order is an unlawful application of the provisions of sections 258 and 259 of article 56 of the Code, and we conclude as a matter of law that Kolb's Bakery and Dairy, Inc., appellee, is not operating in violation of these provisions.

*Decree affirmed, with costs to the appellees in Nos. 22 and 23.*